```
 1                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                             WESTERN DIVISION

 3   KIMBERLY ASKA,                      )   Docket No. 23 CV 50004
                                         )
 4               Plaintiff,              )   Rockford, Illinois
                                         )   Thursday, September 21,
 5      v.                               )   2023
                                         )   10:30 o'clock a.m.
 6   UNITED STATES OF AMERICA,           )
     et al.,                             )
 7                                       )
                 Defendants.             )
 8
                          TRANSCRIPT OF PROCEEDINGS
 9              BEFORE THE HONORABLE LISA A. JENSEN

10   APPEARANCES:

11   For the Plaintiff:        LOEVY & LOEVY
                               (311 North Aberdeen,
12                              Third Floor,
                                Chicago, IL  60607) by
13                             MR. QUINN RALLINS

14   For the Defendants:       IFMK LAW, LTD.
                               (650 Dundee Road,
15                              Suite 475,
                                Northbrook, IL  60062) by
16                             MR. MICHAEL J. VICTOR

17                             KULWIN, MASCIOPINTO & KULWIN LLP
                               (161 North Clark Street,
18                              Suite 2500,
                                Chicago, IL  60601) by
19                             MS. RACHEL A. KATZ

20                             NATHAN & KAMIONSKI LLP
                               (33 West Monroe Street,
21                              Suite 1830,
                                Chicago, IL  60603) by
22                             MS. NATALIE ADEEYO

23                             ROESER TANNER & GRAHAM LLC
                               (Two North Riverside Plaza,
24                              Suite 1850,
                                Chicago, IL  60606) by
25                             MR. MATTHEW D. TANNER
```

```
 1                                    UNITED STATES ATTORNEY'S OFFICE
                                      (327 South Church Street,
 2                                     Suite 3300,
                                       Rockford, IL  61101) by
 3                                    MS. JANA L. BRADY

 4    Court Reporter:                 Heather Perkins-Reiva
                                      327 South Church Street
 5                                    Rockford, Illinois  61101
                                      (779)772-8309
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1            THE CLERK:  Now calling case number 23 CV 50004,

2     *Kimberly Aska v. United States of America, et al.*

3            THE COURT:  Can I have the appearance of the parties,

4     please, starting with the plaintiff?

5            Hello?

6            MR. RALLINS:  Sorry.  I was on mute.  Sorry.

7            Good morning, Your Honor.  This is Quinn Rallins on

8     behalf of the plaintiff.

9            THE COURT:  Good morning.

10           MS. BRADY:  Jana Brady for the United States and

11    defendants McCloud, Manning, Halsell, Noble, and Wadsworth.

12           THE COURT:  Good morning.

13           MS. KATZ:  Rachel Katz on behalf of defendant

14    Montemayor.

15           THE COURT:  Good morning.

16           MS. KATZ:  Good morning.

17           MR. VICTOR:  This is Michael Victor, counsel for the

18    City of DeKalb defendants.

19           THE COURT:  Okay.  Good morning.

20           MR. TANNER:  And, Your Honor, Matt Tanner on behalf

21    of defendant Schulte.

22           THE COURT:  Okay.  Good morning.

23           MS. ADEEYO:  Good morning, Your Honor.  Natalie

24    Adeeyo on behalf of defendant Yingling.

25           THE COURT:  Okay.  Good morning.

1          Is that everyone?

2          Okay.  I want to get through this morning.  We had a

3    motion to stay discovery filed by, I believe it was, the City

4    of DeKalb defendants.  I'm going to deny that motion.  The

5    factors that need to be analyzed with respect to a motion to

6    stay discovery include prejudice, simplification of the

7    issues, and reducing the burden of litigation.  The moving

8    party did not analyze any of those requirements in their

9    motion.

10         The plaintiff did address those issues indicating

11   that they would be prejudiced in staying the case until the

12   motions were resolved considering that those motions are not

13   yet fully briefed, and the age of the case, as well as the

14   underlying age of the matter based on the fact that certain

15   exhaustion requirements had to be met, and as a result, their

16   allegations of prejudice went unanswered.

17         Simplification of the issues and reducing the burden

18   of litigation, the motions pending would not dispose of the

19   entire case, and as a result, I do not believe that -- sorry,

20   I'm suffering from a cold -- I do not believe that the issues

21   would be simplified or the burden of litigation would be

22   lessened as a result of staying discovery.

23         The moving party also mentioned the existing issue

24   with respect to the Westfall motion, but the Westfall motion

25   would only apply to two of the claims and would not eliminate

1    the United States' individual defendants from the case.  So

2    whatever way I rule on that issue is not going to affect

3    discovery for the most part.  It may affect some minor issues

4    but not discovery for the most part with respect to those

5    individuals.

6             So as a result, that coupled with the fact that

7    typically motions to stay discovery based simply on a motion

8    to dismiss, a motion to dismiss -- especially motions to

9    dismiss that are based only on failure to state a claim or

10   failure to draft a complaint specific enough, those

11   traditionally do not form an adequate basis for staying

12   discovery.  So I'm going to deny that motion.

13            Let's move on to the Westfall motion.  The motion is

14   asking to insert the United States in place of the

15   individually named United States defendants, the individually

16   named defendants that are alleged to be United States

17   employees for purposes of the two state law claims.  It is

18   based on an affidavit that was filed indicating that the

19   specific defendants at issue were federal employees and that

20   they were acting in the course and scope of their employment

21   as federal employees during the events at issue in the

22   complaint.

23            There was a more specific affidavit filed in a

24   subsequent response brief that attached as some documentary

25   exhibits the deputization documents showing that the

1   individual defendants at issue were deputized members of the

2   Great Lakes Regional Fugitive Task Force.  The argument as it

3   has ultimately distilled during the briefing appears to be

4   that while the defendants at issue were deputized Great Lakes

5   Regional Fugitive Task Force members and as a result employed

6   by the federal government for purposes of their work as task

7   force members, the issue that the plaintiff seems to be

8   contesting is that during the course and scope of the duties

9   that are alleged -- the actions that are alleged in the

10  complaint, they were acting not in the course and scope of

11  their duties as a task force member but rather in the course

12  and scope of their duties as Illinois Department of

13  Corrections officers.

14        It's clear that the allegations in an affidavit can

15  be refuted.  I don't think either side denies that.

16  Specifically, with respect to whether someone is acting in the

17  course and scope of their employment, that can be attacked if

18  the plaintiffs can come forward with facts that sufficiently

19  refute or call into question that affidavit.

20        What specifically concerns me in this particular case

21  is while the affidavit indicates that during this operation

22  these officers were operating in the course and scope of their

23  employment, in the complaint and the answer to the complaint,

24  which is -- and let me pull it up -- which is, I think,

25  Docket 21 at Allegation 18, at Allegation 18 it is alleged

1   that:  "At all times relevant to the events described in this

2   complaint, defendants," and it lists the named defendants that

3   are at issue here, "and unknown officers were employed by

4   IDOC.  They engaged in the conduct complained of herein under

5   color of law and in the course and scope of their employment

6   and are sued in their individual capacity."

7           So unlike a number of the cases that involve the task

8   force where it's alleged in the complaint that the individual

9   defendants were members of the task force, that is not alleged

10  in this complaint.  What is alleged is that these individual

11  officers were employed by IDOC and that during the course and

12  scope -- and that during the carrying out of the alleged

13  events in the complaint, they were operating in the course and

14  scope of their employment with IDOC.

15          The answer to the complaint does not deny this.  The

16  answer reads:  "The United States admits that the named

17  defendants were employed by IDOC and appointed to serve as

18  special deputy U.S. marshals for the Great Lakes Regional

19  Fugitive Task Force.  The United States denies that they

20  engaged in the conduct complained of herein."  There is no

21  denial that during the events that are alleged in the

22  complaint they were operating in the course and scope of their

23  employment by IDOC.

24          So it appears that this raises a question of fact as

25  to whether that allegation that they were operating in the

1    course and scope of their employment with IDOC is true and

2    accurate.  Based on that, I'm going to allow some limited

3    discovery on this to determine which is correct.  They either

4    were in the course and scope of their employment with IDOC or

5    operating in the course and scope of their employment as

6    federal employees with the task force.

7            However, I think the proposed discovery that is

8    contained in the most recent briefing by the plaintiff is

9    overbroad.  I'm not sure why there would need to be months

10   worth of discovery.  It would seem to me that what would be

11   appropriate would be information that would go to whether they

12   were assigned through the task force on the day they were

13   serving that arrest warrant, and it would seem to me that

14   there is a specific set of documents that is specifically in

15   the possession of the defendants, whether it be -- well, it

16   would be the task force, as to whether they had called IDOC or

17   called the defendants personally and asked them to assist on

18   that day, and those are the documents that would be

19   responsive.

20           There also may be some documents or information that

21   would go to the factors under Illinois law, which is what

22   would apply here as to how course and scope of employment are

23   analyzed, such as who was supervising them that day and so

24   forth.  But it seems to me the most relevant documents would

25   be any emails or documents that would indicate whether they

1    were called to assist in serving that complaint as part of

2    their duties by the task force, and it would seem to me that

3    those would be relatively easy to locate.  Those were not

4    attached in any of the documents that were attached to the

5    affidavit filed by the defendants.

6            So I am going to give the plaintiff 14 days to

7    provide a revised limited request to the defendant,

8    specifically and narrowly tailored to that issue of whether

9    they were -- on the date they were serving that arrest

10   warrant, whether they were operating as task force members;

11   and I'm going to ask the parties to meet and confer, and if

12   they cannot agree to the scope of the discovery, to quickly

13   bring that to my attention because I don't want to drag this

14   out.  This needs to be resolved quickly so we can move

15   forward.

16           Finally, I have the issue of the parties not being

17   able to agree on a case management order.  This is unusual and

18   does not bode well for what I expect in this case, which is

19   that the parties work together.  I almost never have a

20   contested case management order.  Be that as it may, I am not

21   going to let this sit any longer.

22           So I'm going to require that 26(a)(1) disclosures be

23   exchanged by October 5th, 2023.  I am going to require that

24   plaintiff may not serve more than 20 interrogatories upon any

25   defendant, that each defense attorney may serve plaintiff with

1    25 interrogatories.  If, for whatever reason, after those

2    interrogatories are served and answered and as the case

3    proceeds there is reason to believe that additional

4    interrogatories are necessary, the parties can file a motion

5    with me and provide a basis for why additional interrogatories

6    may be necessary.  And they may be necessary.  I just don't

7    know at this point.  And I want to get the matter moving.

8           There is a maximum of 25 requests for admission by

9    each party to any other party.  There is a maximum of 25

10   depositions by plaintiff and 15 by defendants.  This does not

11   include expert discovery which is reserved.  Each deposition,

12   other than a party which shall be limited to seven hours,

13   shall be limited to a maximum of five hours unless extended by

14   agreement of the parties.  Fact discovery is going to end

15   September 11th, 2024.  So the deadline for the parties to file

16   amended pleadings will be 90 days before the close of fact

17   discovery.

18          Veronica, can you do that math for me?

19          THE CLERK:  I can.  It will take me one moment, Your

20   Honor.

21          That would be June 13th of 2024.

22          THE COURT:  Federal Rule of Civil Procedure

23   26(a)(2)(C) disclosures by 45 days prior to September 11th.

24          I'm glad you've got your calculator, Veronica.

25          THE CLERK:  Okay.  Could you repeat that one more

1    time, Your Honor?

2            THE COURT:  45 days prior to September 11th, 2024.

3            THE CLERK:  That would be July 28th, 2024, Your

4    Honor.

5            THE COURT:  Supplementations under Rule of Civil

6    Procedure 26(c) will be made by July 28th, 2024, and as I

7    mentioned, fact discovery cutoff is September 11th, 2024.

8    Expert discovery is reserved, and all dispositive motions,

9    that date will be reserved.

10           Okay.  Let's have a written status report on the

11   status of discovery due in 60 days, and I can probably do that

12   pretty quickly.

13           THE CLERK:  I have that.

14           THE COURT:  Okay.  Good.

15           THE CLERK:  November 20th.

16           THE COURT:  Which is?

17           THE CLERK:  November 20th.

18           THE COURT:  All right.  November 20th for a written

19   status report on the status of discovery.

20           Anything further I can help the parties with?

21           MS. KATZ:  Yes, Your Honor.  This is Rachel Katz on

22   behalf of defendant Montemayor.

23           Based on your rulings, I just had a quick question

24   that I wanted to bring to the Court's attention.

25           I'm assuming you haven't read our client's motion

1   given that it is not fully briefed, but the main issue is

2   whether our client is acting in a capacity as a task force

3   officer, which would make a 1983 claim inapplicable, and it

4   would have to be a Bivens claim, and plaintiff has the time to

5   answer.  But given that this limited discovery has been

6   allowed with respect to this main issue, it also affects the

7   U.S. Attorney's Office's motion to substitute.

8           I just wanted to front that.  I didn't know if

9   plaintiff would want to delay or you want supplemental

10  briefing based on whatever is uncovered during this time

11  because there is neither support or deny the argument.

12          THE COURT:  Let me hear from plaintiff's counsel on

13  that.

14          MR. RALLINS:  Yes, Your Honor.  I think defense

15  counsel is right.  Within their motion to dismiss, there

16  are -- it is, obviously, not the entire motion to dismiss, but

17  a few arguments that the ultimate decision would depend on

18  ultimately the Court's decision with regard to their Westfall

19  motion.

20          THE COURT:  So would you suggest that after I make my

21  decision that we do some supplemental briefing before we turn

22  the motion to dismiss over to the district judge?

23          MS. KATZ:  I would think that would be wise because

24  defendant may need to supplement their motion based on

25  whatever is uncovered, and then allow plaintiff to actually

1    respond to those arguments, instead of bringing it up in a

2    reply based on whatever is disclosed at a later date.

3              THE COURT:  Anybody else want to chime in on that?

4              MS. BRADY:  This is Jana Brady for the United States.

5              I was just wondering, the substitution motion, is

6    that going to be an issue that is ultimately ruled upon by

7    Judge Johnston?

8              THE COURT:  It will probably be ruled on by me.  I

9    think it will be ruled on by me.

10             MS. BRADY:  In the form of a report and

11   recommendation or a substantive issue?  Because it goes to

12   whether or not certain counts are dismissed against certain

13   defendants.

14             THE COURT:  I'm not sure at this point, but either

15   way, the decision will come from me.  I need to look into

16   whether it would be a report and recommendation or a -- I

17   mean, all that is going to do is affect the standard by which

18   it is reviewed.  But I will just have to look into that.

19             MS. BRADY:  Okay.  Thank you.

20             MS. KATZ:  And, Your Honor, Rachel Katz again.

21             We also reserved in our motion, depending on how you

22   rule with respect to the substitution, that would affect what

23   arguments we need to make regarding those claims if the

24   individuals are still named defendants, and that's another

25   reason that I was thinking to maybe push it back.

```
 1              THE COURT:  I'm sorry.  I'm sorry.  I missed that.
 2   Again, I'm a little foggy with my cold here.
 3              So say that again?
 4              MS. KATZ:  Sure.
 5              The individual defendants for which the U.S.
 6   Attorney's Office is seeking to substitute the United States
 7   for, in our motion to dismiss, we didn't make any arguments to
 8   dismiss the claim because it would be futile or be moot if the
 9   substitution was granted.  If it's not granted, then arguments
10   like immunity and things like that would be argued.  But we
11   said in a footnote depending on how the Court ruled, that
12   would determine whether or not we would be making arguments to
13   dismiss those claims as well.
14              THE COURT:  Wait a minute.
15              Are you saying you represent those individual
16   defendants?
17              MS. KATZ:  I represent one individual defendant,
18   correct.
19              THE COURT:  Okay.  One of them.  All right.  All
20   right.
21              MS. KATZ:  Montemayor.
22              THE COURT:  Okay.  Thank you.
23              Let's do this:  So there is a consolidated response
24   coming from the plaintiff on that.  Why don't we -- does it
25   make sense, do you think, to hold off on the reply until I
```

1    rule on the Westfall issue and then everything could be

2    incorporated in that?  I don't know if that makes it easier.

3            MS. KATZ:  Do you mean that we don't waive any

4    arguments by bringing those things up in the reply as opposed

5    to the original motion?  That would be fine with us.

6            THE COURT:  And I have to believe, Mr. Rallins, you

7    wouldn't be arguing waiver considering the issue is just new

8    now?

9            MR. RALLINS:  Absolutely not, Your Honor.

10            THE COURT:  All right.

11            MR. RALLINS:  And that would --

12            THE COURT:  Go ahead.

13            MR. RALLINS:  No, we would be fine with allowing in

14    the reply.

15            THE COURT:  Okay.  So that's on the record.  So that

16    should not be an issue.  And I think that just makes it

17    cleaner for the district judge.  He won't have so many

18    different responses to coordinate.  So based on what I rule,

19    any issue would be addressed in the reply brief, and let me

20    know if you need more pages or whatever.  We can certainly

21    deal with that by just a written motion and ruling, okay?

22            MS. KATZ:  Sounds good.  Thank you.

23            THE COURT:  Okay.  All right.  Thank you, everyone.

24            MS. KATZ:  So are we pushing the reply date out based

25    on this or are we just keeping it as is?

```
 1              THE COURT:  Oh, you are right.  We are going to have
 2    to.
 3              Let's do this:  Let's strike the reply date, and we
 4    will set a reply date once I have ruled.  I just don't know
 5    how this is going to play out, right?  I'm hoping this happens
 6    very quickly.  I'm certainly going to push it to happen very
 7    quickly.  So once I make my ruling on the Westfall issue, I
 8    will get everybody's input on what a suitable reply date would
 9    be.
10              MS. KATZ:  Wonderful.  Thank you.
11              And feel better.
12              THE COURT:  Thank you.
13              MR. TANNER:  Matt Tanner for defendants.
14              Can I bother you with one more thing?
15              THE COURT:  You may.
16              MR. TANNER:  It is a bit of special pleading that I
17    don't love doing, but I'm scheduled to undergo surgery on
18    Monday, and I will probably be in the hospital at least all
19    week.  That's the optimistic viewpoint.  I'm a little
20    concerned about trying to hit the 26(a)'s by October 5th.  I
21    think if we could even push that by a week -- whether it is
22    for me or everybody, I don't much care -- that would be much
23    appreciated.
24              THE COURT:  Push it by a week; is that what you said?
25              MR. TANNER:  Yes.
```

```
1              THE COURT:  Any objection by anybody?

2              MS. BRADY:  No.

3              THE COURT:  Done.  Done.

4              So it is now whatever seven days from the day I said.

5              THE CLERK:  October 12th, Your Honor.

6              THE COURT:  I'm sorry?

7              THE CLERK:  October 12th.

8              THE COURT:  Okay.  October 12th.

9              MR. TANNER:  I appreciate that.

10             THE COURT:  Yes.  Thank you.

11        (Which were all the proceedings heard.)

12                       CERTIFICATE

13     I certify that the foregoing is a correct transcript from

14   the record of proceedings in the above-entitled matter.

15   /s/Heather M. Perkins-Reiva            October 2, 2023

16   _____     _____

     Heather M. Perkins-Reiva                    Date
17   Official Court Reporter

18

19

20

21

22

23

24

25
```