### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

KIMBERLY ASKA,

*Plaintiff,*

v.

KENNETH YINGLING *et al.*,

*Defendants.*

No. 3:23-CV-50004

HONORABLE IAIN D. JOHNSTON

### MEMORANDUM OPINION AND ORDER

Plaintiff Kimberly Aska brings this action against several law enforcement officers from the Illinois Department of Corrections, DeKalb Police Department, and U.S. Marshal Service, as well as the City of DeKalb and the United States of America. Defendant Michael Schulte, a Senior Inspector with the U.S. Marshal Service, moves to dismiss the claims against him. For the following reasons, the Court denies Officer Schulte's motion based on the arguments presented in that motion.

### BACKGROUND

On January 11, 2022, law enforcement officers from the Illinois Department of Corrections, DeKalb Police Department, and U.S. Marshal Service surveilled Ms. Aska's home because they believed a parolee they sought to detain was there. Dkt. 19 ¶ 23. After observing Ms. Aska leaving her house with a cousin, Defendants Kenneth Yingling and Matthew Montemayor went to stop Ms. Aska's vehicle. *Id.* ¶ 31. They demanded that she go back home to help them find the parolee, but she said she didn't want to go with them. *Id.* After half an hour of interrogating Ms. Aska, they

threatened to take her phone unless she cooperated, so she agreed to go with them back to her house. *Id.* ¶ 34.

At her house, Ms. Aska refused to let the officers go inside—Officers Yingling, Montemayor, and Schulte were among the officers asking to enter the house. *Id.* ¶ 35. The door was locked, so Ms. Aska's cousin climbed through the window and opened the door from the inside. *Id.* ¶ 36. After the door was open, Ms. Aska stepped inside, but she would not let the officers enter or search her house. *Id.* ¶¶ 34, 37, 40. Officer Yingling or Officer Montemayor said the officers had a warrant to search her house for guns, but they couldn't produce a warrant because they didn't have one. *Id.* ¶¶ 2, 39. The back and forth continued with Officers Yingling, Montemayor, and Schulte asking why they couldn't enter, and Officers Yingling and Montemayor threatened to imprison Ms. Aska if she didn't comply. *Id.* ¶¶ 41, 43. She again didn't want the officers to enter her home. *Id.* ¶ 43.

Officer Yingling then grabbed Ms. Aska. *Id.* ¶ 45. He slammed her against the wall; she begged the other officers to intervene. *Id.* ¶¶ 45-46. Officer Yingling grabbed her hair, and then Officers Yingling and Montemayor threw her onto the concrete stoop in front of her house. *Id.* ¶¶ 46-47. Officer Yingling tackled her and yelled at her. *Id.* ¶ 48. Then he told her that she was under arrest for lying to them about not knowing of the parolee was at the house. *Id.* ¶ 50. Ms. Aska asked the other officers to help because she was bleeding and severely injured, but they did nothing. *Id.* ¶¶ 51, 53. Instead, they walked her down the street, where they placed her in a law enforcement vehicle. *Id.* ¶ 55.

Some of the officers eventually agreed to get medical help but also threatened Ms. Aska that they would take her to jail if she went to the hospital. *Id.* ¶ 56. Instead of going to the hospital, Ms. Aska was seen by paramedics that arrived on the scene, and they wrapped her knee in a bandage. *Id.*

Officers Schulte, Yingling, Montemayor, and the other officers continued asking Ms. Aska to call the parolee to determine where he was. *Id.* The officers also then searched the house without her consent. *Id.* ¶ 57. After this had occurred, a search warrant was issued. *Id.* ¶ 58. None of the officers included details about the physical altercation or the warrantless search in their reports, nor did they talk to any supervisors about it. *Id.* ¶¶ 60-62. Afterward, Ms. Aska went to the hospital for her injuries. *Id.* ¶ 64.

## LEGAL STANDARD

To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff. *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018). The Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 578 (7th Cir. 2009). The moving party bears the burden of establishing the insufficiency of the plaintiff's allegations. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

## ANALYSIS

Against the U.S. Marshal defendants, including Officer Schulte, Ms. Aska brings two claims—unreasonable search and seizure and unlawful detention—under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Officer Schulte opposes the claims on two grounds: (1) that there is no *Bivens* remedy available and (2) that he is entitled to qualified immunity. The Court finds that neither argument justifies dismissing the claims based on the contentions in the motion.

## I.  *Bivens*

The Supreme Court in *Bivens* recognized an implied cause of action for damages against federal officers for certain constitutional violations. 403 U.S. at 389. The Court then extended that remedy to two additional contexts before reversing course; it has now made clear that such extensions are "disfavored judicial activity." *Snowden v. Henning*, 72 F.4th 237, 238-39 (7th Cir. 2023) (internal quotations omitted) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017)); *Sargeant v. Barfield*, 87 F.4th 358, 363 (7th Cir. 2023).

 The first step is to determine whether the claim "arises in a 'new context' or involves a 'new category of defendants.' " *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020) (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). If the claim presents a new context, the second step is to "ask whether there are any special factors that counsel hesitation about granting the extension." *Id.* (cleaned up) (quoting *Ziglar*, 582 U.S. at 136). In *Egbert v. Boule*, the Court acknowledged that these two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." 142 S. Ct. 1793, 1803 (2022). But

both Officer Schulte and Ms. Aska organized their arguments according to the two-step analysis. So, the Court will engage in the two-step process.

To have a new context, there must be a "meaningful" difference: "A difference is 'meaningful' when it involves a factual distinction or new legal issue that might alter the policy balance that initially justified the implied damages remedies in the *Bivens* trilogy." *Snowden*, 72 F.4th at 239. The most analogous to this case of the three Supreme Court cases recognizing implied causes of action which arise under the Constitution is *Bivens* itself, in which agents from the Federal Bureau of Narcotics entered the plaintiff's home without a warrant, arrested him, and searched the place. 403 U.S. at 389.

Officer Schulte argues specifically that this case presents a new context only because he is a U.S. Marshal.[1] Contrary to Ms. Aska's characterization, it's far from well established that *Bivens* claims can proceed against U.S. Marshals. Indeed, it's well established that it's not well established. Decisions are all over the lot. Many courts have found U.S. Marshals to be a new category of defendants. *See, e.g.*, *Fairchild v. Cundiff*, No. 23-cv-01972, 2024 U.S. Dist. LEXIS 56216, at *6 (N.D. Ill. Mar. 28, 2024); *Logsdon v. U.S. Marshal Serv.*, 91 F.4th 1352, 1358-60 (10th Cir. 2024). But not all courts have. *See, e.g.*, *Lehal v. Cent. Falls Det. Facility Corp*, No.

---

[1] Schulte also notes that there is no excessive force claim against him, but this one-sentence parenthetical isn't enough to develop the argument, so the Court focuses only the question of whether U.S. Marshals are a new type of defendant. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We repeatedly have made clear that perfunctory and undeveloped arguments . . . are waived."); *Greenlaw v. United States*, 554 U.S. 237, 243-44 (2008) ("[W]e rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.").

13-cv-3923, 2019 U.S. Dist. LEXIS 49477, at *32-37 (S.D.N.Y. Mar. 15, 2019); *Deavers v. Martin*, 629 F. Supp. 3d 389, 402 (S.D. W. Va. 2022).

For this case, at this stage, the Court isn't convinced that a different agency, by itself, is enough to warrant calling this a new context. *See also Sargeant*, 87 F.4th at 376 (Hamilton, J., dissenting) ("[W]e do not need to get out in front of the Supreme Court itself in dismantling *Bivens*."). In *Snowden v. Henning*, the Seventh Circuit noted that different classes of defendants "might require more careful consideration," and its examples were private employees and agencies. 72 F.4th at 247 (citing *Minneci v. Pollard*, 565 U.S. 118, 126-31 (2012), and *FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994)). Neither applies to the U.S. Marshals in this case, who, like the agents in *Bivens*, are federal law enforcement officers. Officer Schulte's function in apprehending Ms. Aska was the same as the other law enforcement officers that he was with.

Officer Schulte presents only two reasons why he believes U.S. Marshals are a new category of defendant. First, Officer Schulte notes that the U.S. Marshal Service is the oldest law enforcement agency. The age of the agency seems to be nothing more than a superficial distinction—one "so trivial" that it does not "suffice to create a new *Bivens* context," *Ziglar*, 582 U.S. at 149—because it is merely an historical difference that involves no weighing of the policy considerations that would affect a legislative judgment as to the propriety of a damages remedy. *See Snowden*, 72 F.4th at 244.

Second, Officer Schulte makes a better argument by contending that this is a new context because U.S. Marshals operate under a different statutory mandate; he notes that their duties also include providing court security and investigating fugitive

matters. Dkt. 69 at 8 (citing 28 U.S.C. § 566). Indeed, the Supreme Court has provided "the statutory or other legal mandate under which the officer was operating" as an example of how a case "might differ in a meaningful way." *Ziglar*, 582 U.S. at 139-40. But those unique duties didn't affect Officer Schulte's actions that are at issue in this case; he, Officer Yingling, Officer Montemayor, and the DeKalb police officers were apprehending Ms. Aska together. *See Ziglar*, 582 U.S. at 134 (cautioning that the Court's opinion was "not intended to cast doubt on the continued force" of *Bivens* in the "common and recurrent" "search-and-seizure context in which it arose."); *Lehal*, 2019 U.S. Dist. LEXIS 49477, at *32-37 ("Both *Bivens* and this case involved the same type of federal officers (*i.e.*, arresting agents) who carried out the same type of 'official action' (*i.e.*, effecting the arrest of a criminal suspect)."); *cf. Snowden*, 72 F.4th at 247; *Prado v. Perez*, 451 F. Supp. 3d 306, 315 (S.D.N.Y. 2020) ("Because this case is an allegedly unconstitutional search and seizure carried out by federal law enforcement, [the plaintiff's] claims do not present a new context for the purposes of his *Bivens* claim.").

Officer Schulte provides a few examples of courts finding a new context where there was a different statutory mandate, but they are distinguishable (and not binding on this Court). In *Mejia v. Miller*, the Ninth Circuit speculated that the Supreme Court might see a new context based on the officer's agency, but there were also other reasons to find a new context. 53 F.4th 501, 506 (9th Cir. 2022) ("More importantly, unlike *Bivens*, none of the events in question occurred in or near [the plaintiff's] home."). For the two cases involving Immigration and Customs Enforcement (ICE)

agents, the statutory mandate was distinct because of the immigration component. *Tun-Cos v. Perrotte*, 922 F.3d 514, 524 (4th Cir. 2019) ("The ICE agents were not enforcing the criminal law, as in *Bivens*, but rather were enforcing the immigration law of the INA."); *Diaz Cruz v. United States*, No. 20-CV-891, 2023 U.S. Dist. LEXIS 46507, at *8-9 (E.D.N.Y. Mar. 20, 2023). And in *Dyer v. Smith*, the parties agreed that the claims presented a new *Bivens* context, with the Fourth Circuit reversing the district court's analysis of whether there were special factors that counseled hesitation. 56 F.4th 271, 278, 281 (4th Cir. 2022).

As for *Logsdon v. United States Marshal Service*, the Tenth Circuit looked only at the single question posed by *Egbert*. 91 F.4th at 1357 ("In this case we conclude our analysis should focus on that single question."). *Egbert* instructs that determining whether there is a *Bivens* remedy *often* resolves to that one question, 142 S. Ct. at 1803, but that doesn't mean it has to. Instead, following the Seventh Circuit's lead in *Snowden*, the Court uses the two-step approach in evaluating the parties' arguments. The Court finds that Officer Schulte's status as a U.S. Marshal isn't enough under the allegations of this case to constitute a meaningful difference that would present a new *Bivens* context, so there is no need—based on the parties' filings—to decide whether special factors counsel hesitation.

## II. Qualified Immunity

To defeat a defense of qualified immunity, (1) a plaintiff must "adequately allege[] facts that, if true, would constitute a violation of a statutory or constitutional right," and (2) the right must be "'clearly established' at the time of the alleged violation, such that a reasonable public official would have known his conduct was unlawful."

*Hanson v. LeVan*, 967 F.3d 584, 592 (7th Cir. 2020) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Officer Schulte's qualified immunity argument focuses only on the first element—the existence of a constitutional violation. He argues that the allegations don't show that he specifically acted in violation of Ms. Aska's rights.

Officer Schulte highlights that the factual allegations that don't name him specifically. But factual allegations can be directed at all of the defendants collectively. *Brooks*, 578 F.3d at 582; *see also Cutrone v. Allstate Corp.*, No. 20 CV 6463, 2021 U.S. Dist. LEXIS 185430, at *22-23 (N.D. Ill. Sept. 28, 2021). This type of pleading is far from best practice. *Mardsen v. Kishwaukee Cmty. Coll.*, 572 F. Supp. 3d 512, 532 (N.D. Ill. 2021); *Harris v. Rockford Police Dep't*, No. 19 CV 50168, 2021 U.S. Dist. LEXIS 165874, at *5-6 (N.D. Ill. Sept. 1, 2021); *Martinez v. Wexford Health Servs.*, No. 18-cv-50164, 2021 U.S. Dist. LEXIS 75255, at *9-10 (N.D. Ill. Apr. 20, 2021). Indeed, in many contexts, this type of pleading is improper. *See, e.g.*, *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2012). But, based on the complaint, Officer Schulte was part of the group of officers that went to Ms. Aska's house, placed her in a law enforcement vehicle, and searched her house without a warrant and without her consent. *See* Dkt. 19 ¶¶ 35, 55, 57. Despite the improper group pleadings, that is enough to allege that Officer Schulte violated Ms. Aska's Fourth Amendment rights, so Officer Schulte is not entitled to qualified immunity at this time. Once again, the Court requests counsel to stop using group pleadings.

## CONCLUSION

Ms. Aska's claims, narrowly, survive the specific challenge presented before the Court; Officer Schulte's motion to dismiss is denied based on the arguments presented.

Date: May 15, 2024

HONORABLE IAIN D. JOHNSTON
*United States District Judge*