IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KIMBERLY ASKA | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 23-cv-50004 |
| v. | ) | |
| KENNETH YINGLING, et al. | ) | |
| | ) | Judge Johnston |
| Defendants. | ) | Magistrate Judge Schneider |
| | ) | |

**PLAINTIFF'S ADDITIONAL STATEMENT OF FACTS IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Kimberly Aska, through her attorneys, Fed. R. Civ. P. 56 and Local Rule 56.1, hereby submits the following additional statement of facts in opposition to Defendants' motion for summary judgment.

### A. IDOC Assigns Defendant Montemayer As Lead Investigator for Parolee's Apprehension

1. Defendants Montemayer and Yingling are senior parole agents within the Illinois Department of Corrections' Fugitive Apprehension Unit, where they were selected by Chief of Parole Jason Garnett to apprehend parole violators. ECF 253-9 (Ley Dep.) at 103:19-23; 100:18-101:21; 102:12-18; 104:8-13.

2. On November 12, 2021, IDOC parolee Adam Graham called IDOC to request a transfer of his parole residence to Plaintiff's home, and provided them with her address on Chamberlain Drive in Dekalb, Illinois ECF 253-8 (Sandoval Report) at 11.[1] Ultimately, Graham removed his ankle bracelet, violating the conditions of his parole. IDOC considered him to be absent without leave. ECF 253-9 (Garnett Dep) at 23 ("would be considered, what we call AWOL").

3. Since Graham violated the conditions of his parole as defined by state law, IDOC automatically issued an arrest warrant for him on November 17, 2021. *Id.* 41:3-42:4.Ex. L (IDOC Warrant); ECF 253-8 (Sandoval Report) at 11; ECF 253-9 (Ley Dep.) at 149:7-8. The warrant required Graham to be brought back into custody of IDOC because he remained

---

[1] Defendants provide the misleading label "TFO Montemayer USM-11 Report of Investigation" in their exhibits. Plaintiff learned through this discovery that this required report was not completed by Defendant Montemayer, but Inspector Sandoval. Ex. C(Sandoval Dep) at 42:4-13 She copied and pasted what Montemayer told her occurred at Plaintiff's home. *Id.*

1

under the state's custody and control. ECF 253-9 (Garnett Dep) at 42:5-14; Ex. L (IDOC Warrant); Ex. M (IDOC Fugitive Case Management Administrative Directive) at 1.

4. IDOC assigns agents to locate and apprehend fugitives who are AWOL. *Id.* at 1. . However, IDOC's cases are ranked by priority. *Id.* at 3. An AWOL parolee, even a sex offender, is considered the second least priority under IDOC's policies for managing fugitive cases. *Id.* at

**B. Defendants Montemayer and Yingling Do Not Apprehend Parolee at Plaintiff's Known Home Address**

5. The next day, on November 18, 2021, IDOC assigned Defendant Matthew Montemayer to apprehend Graham, and informed him of the arrest warrant. ECF 253-2 (Montemayer Dep) at 116:4-18; 116:25-117:1. Ex. N (IDOC 1.18.2021 Email) at 1.

6. Montemayer also used IDOC's resources, and the Illinois State Police to receive information about Graham. ECF 253-9 at 44:18-45:6. Additionally, Montemayer used public databases such as social media to confirm that Graham was residing at Plaintiff's home on Chamberlain Drive. Ex. V (IDOC 12.19.21 email); ECF 253-8 (Sandoval Report) at 11

7. One month later, on December 20, 2021, Defendant Montemayer contacted Defendant Yingling to confirm that Graham was residing at Plaintiff's home. Ex. O (IDOC 12.20.2021 Email) at 1. This was the only known location Defendant Montemayer had for Graham was Plaintiff's home in Dekalb, Illinois, but Defendants never attempted to apprehend Graham until January 11, 2022. ECF 253-2 (Montemayer Dep) at 124:19-22; 123:25-124:1; 124:2-7; 124:16-18 ("I don't remember"); 125:3-1 ("that wouldn't be our first stop"); 125:15-22 ("we had other locations"); 125:24-126:3 ("I don't recall"); 126:8-14 ("No"); 126:16-23 ("couldn't recall").

8. Defendant Montemayer did not attempt to arrest Graham until January 11, 2022. ECF 253-2 (Montemayer Dep.) at 128:2-8 ("only on the 11th"). As the lead investigator, he is unaware of a single investigative step taken by the U.S. Marshals prior to January 11, 2022, to apprehend Graham. ECF 253-2 (Montemayer) at 128:-129:2 ("I–I don't know").

9. The only record of the Great Lakes Regional Task Force adopting the case is that a federal identification number was created. ECF 253-4 (Grimaldo Dep.) at 22:19-25. In order for the task force to adopt a case, IDOC is supposed to refer the case to the task force to review. ECF 253-4 (Grimaldo Dep.) at 20:19-20. But there is no documentation of any referral, and none has been produced in discovery. *Id.* at 22:14-19. According to Task Force Commander Grimaldo, the adoption means that the two agencies are "going to help each other." *Id.* at 21:6.

10. The purpose of the identification number is to permit the task force to use federal resources to attempt to arrest a fugitive, including vehicles, overtime, and investigative tools. ECF 253-4 (Grimaldo Dep) at 25:16-20.

**C. IDOC's Chief of Parole Orders Defendants to Apprehend Parolee at Plaintiff's Home For Transporting Drugs into State Prison**

11. In Illinois state government, there is a hierarchy of authority that flows through the State of Illinois to maintain order and protect public safety. ECF 253-9 (Garnett Dep) at 54:18-21. The Governor appoints the IDOC Director, who is overseen by the Governor's executive team. *Id.* at 45:7-14. The IDOC Director then supervises the Chief of Parole (ECF 253-9 at 20:18-25), who oversees the supervision of all parolees and their apprehension, if they violate the conditions of their parole. *Id.* at 18-20. 19:21-20:4. The Chief of Parole oversees Commander Robert Ley of the Fugitive Apprehension Unit, which includes Defendants Montemayer and Yingling. *Id.* at 61:22-23.

12. On January 8, 2022, IDOC Chief of Parole, Jason Garnett, received intelligence from his IDOC staff that parolee Adam Graham was responsible for transporting drugs being sent into a state prison. ECF 253-9 at 46:20-48:23. Two days prior, IDOC's Internal Affairs discovered that a package being sent to a state prison contained sedative-hypnotic drugs, known as barbiturates. Ex. P at 8. To determine the source of the drugs, IDOC listened to inmate phone calls and concluded that Graham was responsible for transporting the drugs into the state prison. Ex. P (IDOC Email Re Drugs) at 8.

13. That same day, Chief Garnett ordered Defendant Montemayer to apprehend Graham ("let's get him off the streets") for transporting the drugs into the state prison. *Id.* at 1. Chief Garnett's order was unaware the Great Lakes Regional Task Force adopted the case, and he did not report to the Task Force. ECF 253-9 at 54:2-9. Yet Montemayer does, and IDOC expected him to follow the Chief's orders and apprehend Graham. ECF 253-9 at 54:18-21.

14. Chief Garnett also informed Defendant Montemayer that arresting Graham for transporting drugs was a matter of high importance. ECF 253-2 at 315: 6-11. At that point, Defendant Montemayer knew that Chief Garnett's orders were the top priority. ECF 253-2 at 315:25-316:14; ECF 253-2 at 317:19-318:4; Ley Dep. at 79:3-6 ("It should be something handled on the top of my list").

15. The U.S. Marshals never knew the Chief Garnett ordered Defendants to apprehend Graham for transporting drugs into the state prison. ECF 253-3 (Schulte Dep) at 77:7-8; 9-11; 12-16; 77:17-78:4 ("I'm not aware of that, no"); ECF 253-4 (Grimaldo Dep) at 46:4-9 ("I was not aware of that"); ECF 253-5 (Norwick Dep) at 253-5 at 75:7-14 ("No, not aware").

**D. Defendants Use State Resources In An Attempt to Apprehend Graham**

16. On January 11, 2022, Defendants traveled to Dekalb, Illinois in <u>state-issued vehicles</u>. ECF 218 ¶34 (Montemayer's Answer to Second Amended Complaint); ECF 219 ¶34 (Yingling's Answer to Second Amended Complaint); ECF 253-11 (Yingling Dep.) at 115:16-19. Defendants were required to travel in the performance of their state duties. ECF 253-9 (Ley Dep.) at 101:20-23; Ex. AA (Montemayer Performance Evaluation) at 2; Exh. BB (Yingling Performance Evaluation) at 2. Defendants are only allowed to use the IDOC vehicles when they are performing their duties on behalf of the state. ECF 253-9 (Garnett Dep) at 25:13-16; 64:14-15; ECF 253-11 (Yingling Dep) at 58:17-19. They were required to comply with IDOC procedures governing the use of their state-issued vehicles. ECF 253-2 (Montemayer Dep) at

3

44:25-45:6. The state insures the IDOC vehicles they drive and are responsible for any liability while Defendants use the vehicle. ECF 253-2 (Montemayer Dep) at 62:19-25; ECF 253-9 (Garnett Dep) at 25:4-12.

17. Defendants had <u>state issued-firearms</u>. ECF 253-2 (Montemayer Dep) at 62:18-61:7; ECF 253-11 (Yingling Dep) at 60:25-61:14 ("That's the only weapon that I'm authorized to carry"). They were required to comply with IDOC procedures governing the use of their state-issued firearms. ECF 253-2 (Montemayer Dep) at 44:25-45:3; 9-10; ECF 253-11 (Yingling Dep) at 65:2-7. They had no federally-issued firearms. ECF 253-2 (Montemayer Dep) at 63:8-13. ECF 253-11 (Yingling Dep) at 60:22-24 ("The Marshals do not issue us a weapon").

18. On January 11, 2022, Defendants had <u>state issued-cell phones</u>. ECF 253-2 (Montemayer Dep) at 65:2-7; ECF 253-11 (Yingling Dep) at 64:13-64:22; 65:14-17. Defendants are only allowed to conduct state business on their state-issued cell phones. ECF 253-9 (Garnett Dep) at 26:6-9. They were required to comply with IDOC procedures governing the use of their state-issued cell phones. ECF 253-2 (Montemayer Dep) at 44:25-45:3; 7-8. Defendants did not use federally-issued cell phones on the date of the incident. ECF 253-2 (Montemayer Dep) at 65:24-66:2; ECF 253-11 (Yingling Dep) at 65:7-13.

19. On January 11, 2022, Defendants had <u>state issued-laptops</u>. ECF 253-2 (Montemayer Dep) at 92:11-15. They were required to comply with IDOC procedures governing the use of their state-issued laptops. ECF 253-2 (Montemayer Dep) at 44:25-45:3; 13-14. Defendants did not have federally-issued laptops. ECF 253-2 (Montemayer Dep) at 93:16-24.

20. Through the entire investigation, Defendants used <u>state issued-emails</u>, and there is no evidence in the record of them of using a federally-issued email account. *See, e.g.* Ex. X (IDOC 12.20.2021 Email) at 1; Ex. X (IDOC 1.11 email) at 1; Ex. P (IDOC Email Re Drugs) at 1. Defendants were required to comply with IDOC procedures governing the use of their state-issued emails. ECF 253-2 (Montemayer Dep) at 44:25-45:3.

21. On January 11, 2022, Defendants wore <u>state-issued badges</u>. ECF 218 ¶34 (Montemayer's Answer to Second Amended Complaint); ECF 219 ¶34 (Yingling's Answer to Second Amended Complaint). Defendant Yingling and Montemayer wore their IDOC issued-badges on their chests. ECF 253-11 at 140:1-12; ECF 253-2 at 145:24-146:3; Ex. K (2024.1.19 Yingling 37.2 Response Letter).The only actual badge Yingling had on display for Ms. Aska to see was an IDOC badge. ECF 253-11 (Yingling Dep) at 140:25-141:2. Defendants did not have any Marshal's badge to display. ECF 253-11 (Yingling Dep) at 141:6. Montemayer claims that he has a Marshal's badge too, but he doesn't display it. ECF 253-2 (Montemayer Dep) at 146:23-147:3 ("It's always in my pocket"). IDOC required them to wear their badges under state law and policy. ECF 253-11 (Yingling Dep) at 59:18-21

22. As the leader of the investigation, Defendant Montemayer provided a 40-minute briefing for all officers about Plaintiff and Graham, including the possibility of Graham bringing drugs into the state prison.

### E. Defendants Detain Ms. Aska in State Vehicle

23. Defendant Montemayer arrived after 7 a.m. to lead a briefing of the Graham investigation for several IDOC and Dekalb police officers, including about Graham bringing drugs into the state prison. ECF 253-11 (Yingling Dep) at 115:14-19; ECF 253-2 (Montemayer Dep.) at 132:16-20; 134:2-18; ECF 253-2 at 321:24-322:12. The only U.S. Marshal who came to assist was Inspector Michael Schulte was not in-charge, not a supervisor, not a team leader, did not lead the investigation, and only came to assist. ECF 253-3 (Schulte Dep) at 219:1-9; 108:13-18; 109:11-16; 244:1-5; 244:3-5; 219:14-16. Accordingly, Inspector Schulte provided no instructions during the briefing and was unaware that Chief Garnett instructed Montemayer to apprehend Graham for transporting drugs. *Id.* at 21:25l 93:8-13.

24. Defendants then went to Ms. Aska's home with Yingling driving Montemayer in the state-issued vehicle. ECF 253-2 (Montemayer Dep) at 136:7-9. At approximately 10:30 a.m., Ms. Aska exited her house and left in her car. ECF 253-8 at 9 (Yingling Report). Defendant Yingling turned on the flashing lights of his state vehicle and they detained Ms. Aska. ECF 253-2 (Montemayer Dep) at 145:6-1; 148:7-14; ECF 253-11 (Yingling Dep) at 142:4-15; 142:16-129; 143:4-8; 149:6-25.

25. Defendants approached Ms. Aska's vehicle and questioned her based on their reasons for apprehending Graham. ECF 253-11 (Yingling Dep) at 143:9-15. Defendant Yingling questioned Ms. Aska from her driver's side window, while Montemayer at the passenger side. ECF 253-11 (Yingling Dep) at 142:16-129; 143:4-8..

26. After questioning Ms. Aska, Defendants placed her in their IDOC vehicle. ECF 253-11 (Yingling Dep) at 146:21-23. They told Ms. Aska that, if she wouldn't agree, they would arrest her. ECF 253-11 (Yingling Dep) at 152:13-16. Without her consent, Defendants drove Ms. Aska back to her house in the state vehicle and confiscated her phone. ECF 253-11 (Yingling Dep).

27. While detaining Ms. Aska, at 12:40pm, Defendant Montemayer sent another IDOC update email regarding Graham using his laptop. Ex. X (1.11.2022 Email). He had to comply with IDOC's policies when using their emails. ECF 253-2 (Montemayer Dep) at 44:25-45:3. Further, Defendants used state-issued laptops during the incident and were required to follow IDOC usage policies. ECF 253-2 (Montemayer Dep) at 92:11-15; 44:25-45:3; 13-14. Defendants did not have any federally-issued laptops with them. ECF 253-2 (Montemayer Dep) at 93:16-24.

### F. Defendants Approach Ms. Aska's Home with State Badges and Guns

28. Defendants approached Ms. Aska's home with state issued-glock 9mms. ECF 253-2 (Montemayer Dep) at 62:18-61:7; ECF 253-11 (Yingling Dep) at 60:25-61:14 ("That's the only weapon that I'm authorized to carry"); ECF 253-11 (Yingling Dep) at 60:22-24 ("The Marshals do not issue us a weapon"). They also communicated with each other on state issued-cell phones and used them to conduct IDOC business. ECF 253-2 (Montemayer Dep) at 65:2-7; ECF 253-11 (Yingling Dep) at 64:13-64:22; 65:14-17. Defendants also prominently wore IDOC insignia and badges on their chests. ECF 218 ¶34 (Montemayer's Answer to Second Amended Complaint); ECF 219 ¶34 (Yingling's Answer to Second Amended Complaint).

5

ECF 253-11 (Yingling Dep) at 140:1-12; ECF 253-2 at 145:24-146:3. Still, the only actual badges Defendants had on display for Ms. Aska were state-issued. ECF 253-11 (Yingling Dep) at 140:25-141:2; 141:6. And Montemayer kept his alleged Marshals credential in his pocket. ECF 253-2 (Montemayer Dep) at 146:23-147:3.

**G. Defendant Yingling Rushes Into Ms. Aska's Home Without Consent, Slams Her Against the Wall, and Grabs Her Hair.**

29. Defendants became frustrated with Ms. Aska, and they entered her home without consent. Ex. Y (Ring Camera) at 1-4. Defendant Yingling first rushed into the home, slammed Ms. Aska against a wall, and grabbed her by her hair. *Id.* at 5-8. Defendants Yingling and Montemayer then slung Ms. Aska from inside her home, into the air, and on the concrete outside. *Id.* at 9-17. Ms. Aska was unarmed. *Id.* at 1-3. She never threatened Defendants or anyone else. She was not violent and did not attack them. *Id.* She did not run away. *Id.*

**H. Defendants Report Graham's Apprehension to IDOC Supervisors, but Omit Their Misconduct**

30. Defendants are expected to prepare written reports in accordance with IDOC policies and follow all of IDOC's reporting requirements, *except for reporting the use of force*. ECF 253-11 (Yingling Dep) at 57:5-8. On January 11, 2022, pursuant to IDOC policy, Montemayer reported Graham's arrest to IDOC's Operation Center Defendants, as required for an AWOL parole violator who was apprehended. ECF 253-11 (Yingling Dep) at 57:1-4. ECF 253-2 (Montemayer Dep) at 255:16-256:3. At 4:04pm, IDOC Operations Center confirmed that Graham was in custody. Ex. W (1.11.2022 Email); ECF 253-9 (Ley Dep.) at 82:25-83:10. At 7:28pm, IDOC issued an arrest notification for Graham as required by state policy to notify Defendants' supervisors, including Chief Garnett and Commander Ley, that Graham was apprehended. Ex. D (IDOC Notification of Arrest Report); Ex. CC (IDOC Processing Warrants Administrative Directive) at 5.

31. IDOC also requires Defendants to report incidents up the chain of command without delay and to update their IDOC Commander in a timely manner when they are performing the duties of the state. Ex. AA (Montemayer evaluation); Ex. BB (Yingling evaluation) ECF 253-11 (Yingling Dep) at 57:9-12; ECF 253-11 (Yingling Dep) at 59:11-13. Accordingly, the day after Graham's apprehension, on January 12, 2022 at 2:35pm, Defendant Montemayer sent Commander Ley a direct email confirming that Graham would be charged. Ex. X [IDOC_002-000054]. A minute later, Commander Ley expressed his appreciation. Ex. [IDOC_002-000063] ("That's excellent, thanks"). Defendant Yingling also called Commander Ley on January 12, 2022 to update him on Graham's apprehension. Ex. X [Yingling Limited ROG Answers, No. 2].

32. On January 24, 2022, Defendant Montemayer completed an IDOC Apprehension Investigation Report, which Defendants are required to prepare at the conclusion of a state investigation. Ex. R (Apprehension Investigation Report); ECF 253-11 (Yingling Dep) at 58:3-7. Ultimately, Defendants carried out Chief Garnett's directives, which they must comply with. ECF 253-11 (Yingling Dep) at 59:22-60:3.

6

I. **Only IDOC Holds Defendants Accountable for Excessive Force**

33. Defendants never disclosed the video that captured the excessive force to the IDOC supervisors. ECF 253-9 (Ley Dep) at 170:2-25; 171:22-172:3. In turn, their IDOC supervisors were unaware of the misconduct when they conducted their annual evaluations, where IDOC assesses their ability to constitutionally investigate, apprehend, and arrest IDOC parolees. ECF 253-9 at 21:14-18, 24:1-15; 39:11-14; 39:22-40:1; 134:1-9; 133:9-20. Ex AA; Ex. BB (Yingling and Montemayer performance evaluations); Chief Garnett also evaluates officers' use of force in their performance evaluation, unless officers fail to report it. ECF 253-9 at 39:15: 21. IDOC evaluates Defendants' performances to hold them accountable for their actions. ECF 253-2 (Montemayer dep) at 43:2-5.

34. The U.S. Marshals do not, and have never, conducted an evaluation of Defendant Yingling and Montemayer's performances. ECF 253-2 at 52:4-6 (Montemayer dep) ("No") at 43: 2-5; Ex, C (Sandoval Dep) at 25:7-12 ("I'm not aware of any"). Nor do the U.S. Marshals have performance standards for them. The U.S. Marshals do not, and have never, imposed any disciplinary procedures on any IDOC officer for misconduct, including Defendants Yingling and Montemayer. ECF 253-4 (Grimaldo Dep) at 57:8-10; 78:23-79:2. Only IDOC imposes since it retains responsibility for its officers as the parent agency, and is liable for their actions and omissions. ECF 253-4 (Grimaldo dep)) at 3-7; 12-14; ECF 253-9 (Garnett Dep) at 130:15-19. ECF 253-12 (MOU) at 5.

35. Defendants were required to follow IDOC's use of force policies while serving on the task force. ECF 253-3 at 59:14-19. They prohibit excessive force and require officers to document all force. ECF 253-9 (Garnett Dep) at 31:20-22; 115:8-10. Force must only be employed as a last resort or when other means are unavailable or inadequate Exh. EE at 1 (20 ILCS, Section 501, IDOC Use of Force Policy); ECF 253-9 (Garnett Dep) at 29: 1-5. Officers should only use force when it is necessary - only when an officer has no choice but to resort to force to control the subject. ECF 253-9 (Garnett Dep) at 30:23-31:2. Ex. DD (Parole Use of Force Training) at 6. Reasonable force means that the officer must employ the appropriate amount of force required to gain control over the person. *Id.* ECF 253-9 (Garnett Dep) at 31:4-8. Officers must be able to take the information they perceive concerning the resistance or danger caused by the person and immediately match it with the most proper available means of control. Exh. DD (Parole Use of Force Training 2024) at 10. The level of force used must not exceed the level considered justifiable. ECF 253-9 at 31:14-17.

36. The U.S. Marshals are unfamiliar with IDOC's use of force policies, and whether it conflicts with theirs. Ex. C (Sandoval Dep) at 51:17-18; ECF 253-4 (Grimaldo Dep) at 67:14-19 ("I do not"). The only U.S. Marshal on the scene, Michael Schulte, does not agree with these IDOC policies and does not follow them. ECF 253-3 (Schulte Dep) at 56:2-5 ("No, sir"); 60:25-61:2 ("I have not idea"); 57:21-24 ("No"); 58:22-59:1; 60:6-12 ("I can't theorize about that"); 60:16-17 ("I have no idea"). Inspector Schulte also claims that he does not know whether any force at all was used against Plaintiff. ECF 253-3 at 62:17-19 ("I do not know if force was used"); 63:4-6 ("I don't know if I'd define it as force"). This is impossible given the fact that he was there with them. Ex. Y (Ring Camera).

37. The Memorandum between the Illinois Department of Corrections and the IDOC states that IDOC officers who are members of the Task Force must comply with IDOC's use of force

policies. ECF 253-9 (Garnett Dep) at 59:2-19; ECF 253-12 (MOU) at 7. IDOC retains responsibility for the conduct of its personnel. ECF 253-12 (MOU) at 6. IDOC "shall be responsible for the acts or omissions of its employees". ECF 253-9 (Garnett Dep) at 60:9-22; ECF 253-12 (MOU) at 8. The Task Force Commander was largely unaware of the Task Force Agreement's provisions. ECF 253-4 (Grimaldo Dep) at 59:1-11; 60:8-225.

38. Defendants are not considered federal employees by the U.S. Marshals. ECF 253-4 (Grimaldo Dep) at 31: 15; 31:24-30:2. 32:8; 34:25-33:3. Further, the MOU states that IDOC employees shall not be considered as the agents of another participating agency. ECF 253-12 (MOU) at 8. Defendants knew that the terms of their special deputation explicitly did not constitute employment with the federal government. ECF 253-2 (Montemayer Dep) at 69:3-22; ECF 253-11 (Yingling Dep) at 69:1-10. Defendants were also specifically not authorized to participate in any drug-related investigations as special deputies in the task force. ECF 253-6 (Montemayer Oath) at 2; ECF 253-8 at 2 (Yingling Oath).

## J. IDOC Pays Defendants During the Time When They Violated Plaintiff's Constitutional Rights

39. The task force only reimburses IDOC for overtime incurred. ECF 253-4 (Grimaldo dep) at 119:7-13; ECF 253-9 (Ley Dep) at 117:11-12. IDOC Defendants provide their hours to IDOC. Dep. at 115:16-23. IDOC then provides an invoice to the task force, and the task force reimburses IDOC for the overtime it has paid to the agent. ECF 253-4 (Grimaldo Dep) at 117:25-118:1. IDOC pays the IDOC officers overtime, and the task force reimburses IDOC. ECF 253-4 (Grimaldo Dep) at 118:1-2. Defendants' overtime pay comes with their check from IDOC. ECF 253-9 (Ley Dep) at 52:9-14 ("it comes with their regular check"). The check comes from the State of Illinois Comptroller. ECF 253-9 (Ley Dep) at 136:15-21.

40. IDOC Senior Parole Agents work 8.5 hour shifts. ECF 253-11 (Yingling dep) at 67:19-68:3. Only IDOC, not the task force, pays officers during regular shift hours. ECF 253-4 (Grimaldo Dep) at 119:7-13. On January 11, 2022, Defendant Yingling's regular shift hours were between 7:00 a.m. and 3:30 p.m. ECF 253-11 at 67: 1-7; 12-18 (Yingling dep). The Task Force did not pay him for any hours between 7:00 and 3:30 p.m since those were his regular shift hours. ECF 253-4 (Grimaldo Dep) at 119:7-13. Similarly, Defendant Montemayer's shift on January 11, 2022, was between approximately 6:00 a.m. and 2:30 p.m. ECF 253-2 (Montemayer Dep) at 95:2-5. Accordingly, Defendants were not paid for any activities he performed until after 2:30 p.m. ECF 253-4 (Grimaldo Dep) at 119:7-13.

                                              RESPECTFULLY SUBMITTED,

                                              **KIMBERLY ASKA**

                                              By: /s/ Quinn K. Rallins

                                              Jon Loevy
                                              Quinn Rallins
                                              LOEVY &amp; LOEVY

        311 N. Aberdeen St., 3 rd Fl.
        Chicago, IL 60607
        T: 312-243-5900
        F: 312-243-5902
        rallins@loevy.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which effected service on all counsel of record.

By: /s/ Quinn K. Rallins
*Plaintiff's Attorney*