IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KIMBERLY ASKA | ) |
| | ) |
| Plaintiff, | ) Case No. 23-cv-50004 |
| | ) |
| v. | ) |
| | ) Judge Johnston |
| KENNETH YINGLING, et al. | ) Magistrate Judge Schneider |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT
OF MATERIAL UNDISPUTED FACTS IN SUPPORT OF SUMMARY JUDGMENT**

Plaintiff, Kimberly Aska, through her attorneys, Fed. R. Civ. P. 56 and Local Rule 56.1, hereby submits the following response to Defendants' statement of facts in support of their motion for summary judgment.

1. Disputed in part. Plaintiff seeks to hold Defendants Yingling and Montemayer accountable for violating her constitutional rights based on the orders given by IDOC's Chief of Parole for them to apprehend Graham. ECF 211¶¶18, 25, 80 (Second Amended Complaint). PSOF¶13 Also disputed to the extent that Defendants suggest that Plaintiff did not sustain severe injuries ECF 211¶56. Further disputed to the extent Defendants suggest that "harboring" meant they did not know where to find Graham. PSOF¶7 Defendants simply chose not to go to Plaintiff's residence until they were ordered by IDOC's Chief of Parole to apprehend Graham for transporting drugs into an IDOC facility. PSOF¶8.

2. Undisputed.

3. Undisputed.

4. Disputed in part. The cited evidence does not support that Yingling and Montemayer were authorized "to serve as federal officers". *See* ECF 253-6 at 2; ECF 253-8 at 2. Defendants were not federal employees, but only acting as agents of the state while serving on the task force. PSOF¶38. Further disputed because Defendants' deputation prohibited them participating in any drug investigations, unless they are deputized by the Drug Enforcement Agency or Federal Bureau of Investigations (which they weren't). PSOF¶38.

5. Undisputed.

6. Undisputed that this is in the Marshals' declaration.

2

ose not to go to Plaintiff's residence until they were ordered by IDOC's Chief of Parole to apprehend Graham for transporting drugs into an IDOC facility. PSOF¶8.

1. Undisputed.

2. Undisputed.

3. Disputed in part. The cited evidence does not support that Yingling and Montemayer were authorized "to serve as federal officers". *See* ECF 253-6 at 2; ECF 253-8 at 2. Defendants were not federal employees, but only acting as agents of the state while serving on the task force. PSOF¶38. Further disputed because Defendants' deputation prohibited them participating in any drug investigations, unless they are deputized by the Drug Enforcement Agency or Federal Bureau of Investigations (which they weren't). PSOF¶38.

4. Undisputed.

5. Undisputed that this is in the Marshals' declaration.

6. Disputed in part. While the task force is only supposed to work on cases that fit USMS criteria in their standing operating procedures, it sometimes participates in activities that have not satisfied any federal criteria. ECF 253-4 (Grimaldo Dep.) at 21:24-22:7.

7. Undisputed that, of the 257 members of the Great Lakes Regional Task Force, nearly all of them are from state and local agencies. ECF 253-4 (Grimaldo dep) at 18:15-19:1 ("that number is smaller"). Of the 257 members, approximately 12 are federal officers. *Id.* at 21:24-22:7.

8. Disputed. Defendants Montemayer and Yingling took Graham into custody upon the orders of IDOC's Chief of Parole. PSOF¶8.

9. Disputed. The cited exhibit does not support that Defendants Yingling and Montemayer were under the supervision and control of the United States Marshals. *See* ECF 253-12. Under the Memorandum of Understanding, IDOC retained responsibility for the conduct of its personnel. PSOF¶8. This includes all acts or omissions of Defendants Yingling and Montemayer. They were considered to be agents of the state, and not of the federal government. *Id.*

10. Disputed. The cited exhibit does not support that the task force is statutorily authorized by Section 566 (e). ECF 253-12 at 5. *See also* 28 U.S.C. § 566(e).

11. Undisputed that the federal government spends funds on the Great Lakes Regional Task Force for the state purposes.

12. Disputed in part. The cited evidence does not support that Yingling and Montemayer were authorized "to serve as federal officers". *See* ECF 253-6 at 2; ECF 253-8 at 2. Defendants are not considered federal employees. PSOF¶38. The MOU states that IDOC employees shall not be considered as the agents of another participating agency. *Id.* Further, Defendants knew that

3

the terms of their special deputation explicitly did not constitute employment with the federal government. *Id.*

13. Disputed in part. The cited evidence does not support that Yingling and Montemayer "sworn in as federal officers". *See* Exhs. G, B, H, and V. PSOF¶8. Defendants were only acting as agents of the State and were not considered to be agents of the federal government. PSOF¶38. Consequently, their training was minimal. For example, they received no training on how to document their work and there is no evaluation of their performance. Ex. C (Sandoval Dep.) at 25:13-29:14.

14. Disputed. The cited exhibit does not support that Great Lakes Regional Task Force officers drafted reports and papers using USMS forms. *See* ECF 253-9 at 197.

15. Disputed in part. State agencies, including IDOC, retain responsibility for the conduct, actions, and omissions of its personnel participating in the task force. PSOF¶34.

16. Disputed. State agencies, including IDOC, retain responsibility for the conduct, actions, and omissions of its personnel participating in the task force. PSOF¶34. Also disputed to the extent Defendants suggest that the deposition cites indicates that IDOC did not control, or have involvement in, the Graham case. *See* ECF 253-9 at 9-15. Chief Garnett had no knowledge that the task force adopted the case until the day before his deposition. PSOF¶13.

17. Undisputed.

18. Undisputed.

19. Undisputed.

20. Disputed in part. The evidence cited does not support that Defendant Montemayer presented Graham to the task force because of his history as a violent offender. *See*, Ex. B At the time of his purported presentation of the case to the task force for adoption, Defendant Montemayer did not have any knowledge of Graham being violent or having a violent reputation. ECF 253-2 (Montemayer Dep.) at 137:7-17. Nor did any IDOC employee inform Montemayer that Graham was violent. *Id.* at 137:18-21.

21. Undisputed that the Marshal's declaration states this.

22. Disputed. The witnesses in the cited exhibits, Commander Grimaldo and IDOC Officer McCloud, were unaware of, or did not know that IDOC retains liability for their officers. ECF 253-12 at 5.

23. Disputed in part. IDOC Chief Garnett ordered Defendant Montemayer to coordinate the apprehension of Graham for transporting drugs into a state facility. Ex. P (IDOC Email re Drugs) at 1. He ordered Montemayer because IDOC assigned him as the lead investigator on the case. ECF 253-11 (Yingling Dep.) at 102:19-21. IDOC retained responsibility for the conduct, acts, and omissions of Montemayer and Yingling because they were agents of the state while members of the task force. *Id.* at 6, 8. Since this was a drug related investigation, Yingling and Montemayer were also not allowed to participate as special deputies of the task force, but only as state agents. ECF 253-6 at 2; ECF 253-8 at 2.

24. Disputed. U.S. Marshal Schulte adamantly denies that he was the team leader for Defendants Yingling and Montemayer. ECF 253-3 (Schulte dep) at 244:1-5; 244:3-5; 219:14-16.

25. Disputed. Schulte was not in charge of Defendants Yingling and Montemayer on January 11, 2022. ECF 253-3 at 219:1-9. He was not their supervisor, which is why he did not direct them to complete a Use of Force Significant Incident Report. ECF 253-3 at 81:10-25; 243:24-22. He was also not their team leader. ECF 253-3 (Schulte dep) at 244:1-5; 244:3-5; 219:14-16. At the meeting before the apprehension, Schulte did not provide any instructions. ECF 253-3 at 21:25. He also had no knowledge that Chief Garnett instructed Montemayer to apprehend Graham. ECF 253-3 at 93:8-13. He knew that Defendant Montemayer was leading the investigation; he just came to assist him. ECF 253-3 at 108:13-18; 109:11-16.

26. Disputed in part. As the leader of the investigation, Matthew Montemayer was supervising the investigation, including providing a 40-minute briefing for all officers about Plaintiff and Graham, including the possibility of Graham bringing drugs into the state prison. ECF 253-3 at 108:13-18; 109:11-16; ECF 253-2 at 132:16-20; 134:2-18.

27. Disputed in part. On January 11, 2022, IDOC supervisors were provided with updates. Montemayer called IDOC's Operation Center to report Graham's arrest. 255:16-256:3. The IDOC Operations Center then confirmed that Graham was in custody. Ex. W (01.11.2022 Email). IDOC then notified Chief Garnett of Graham's arrest. Ex. D (IDOC Notification of Arrest Report).

28. Undisputed that Defendants Yingling, Montemayer, and Schulte contributed to reports but omitted that Ms. Aska was brutalized let alone slammed against the wall, grabbed by her hair, and slung on the concrete stoop in front of her house. Ex. X (Inside Video); Ex. X (Outside video).

29. Disputed in part. The cited evidence does not support that Inspector Sandoval was Defendant Montemayer's supervisor. *See* Exhs. M, N, O, and B. Defendants provide the misleading label "TFO Montemayer USM-11 Report of Investigation" in their exhibits. Plaintiff learned through this discovery that this required report was not completed by Defendant Montemayer, but Inspector Sandoval. Ex. C(Sandoval Dep) at 42:4-13 She copied and pasted what Montemayer told her occurred at Plaintiff's home. *Id*.

30. Disputed in part. IDOC, as opposed to the task force, paid Defendants Yingling and Montemayer when they violated Plaintiff's constitutional rights. PSOF¶39. The task force only reimburses IDOC for overtime incurred. PSOF¶40.

31. Disputed. IDOC Chief Garnett ordered Defendant Montemayer to coordinate the apprehension of Graham for transporting drugs into a state facility without the task operation. Ex. P (IDOC Email re Drugs) at 1. He ordered Montemayer because IDOC assigned him as the lead investigator on the case. ECF 253-11 (Yingling Dep.) at 102:19-21. IDOC retained responsibility for the conduct, acts, and omissions of Montemayer and Yingling because they were agents of the state while members of the task force. *Id*. at 6, 8. Chief Garnett's order was

5

unaware the Great Lakes Regional Task Force adopted the case, and he did not report to the Task Force. ECF 253-9 at 54:2-9. Yet Montemayer does, and IDOC expected him to follow the Chief's orders and apprehend Graham. ECF 253-9 at 54:18-21. Further disputed the extent Defendants fault to cite to the operative complaint where Plaintiff seeks to hold Defendants Yingling and Montemayer accountable for violating her constitutional rights based on the orders given by IDOC's Chief of Parole for them to apprehend Graham. ECF 211¶¶18, 25, 80 (Second Amended Complaint). PSOF¶13

32. Disputed. On January 11, 2022, Defendants wore state-issued badges. ECF 218 ¶34 (Montemayer's Answer to Second Amended Complaint); ECF 219 ¶34 (Yingling's Answer to Second Amended Complaint). Defendant Yingling and Montemayer wore their IDOC issued-badges on their chests. ECF 253-11 at 140:1-12; ECF 253-2 at 145:24-146:3; Ex. K (2024.1.19 Yingling 37.2 Response Letter).The only actual badge Yingling had on display for Ms. Aska to see was an IDOC badge. ECF 253-11 (Yingling Dep) at 140:25-141:2. Defendants did not have any Marshal's badge to display. ECF 253-11 (Yingling Dep) at 141:6. Montemayer claims that he has a Marshal's badge too, but he doesn't display it. ECF 253-2 (Montemayer Dep) at 146:23-147:3 ("It's always in my pocket"). IDOC required them to wear their badges under state law and policy. ECF 253-11 (Yingling Dep) at 59:18-21

33. Disputed. On January 11, 2022, Defendants wore state-issued badges. ECF 218 ¶34 (Montemayer's Answer to Second Amended Complaint); ECF 219 ¶34 (Yingling's Answer to Second Amended Complaint). Defendant Yingling and Montemayer wore their IDOC issued-badges on their chests. ECF 253-11 at 140:1-12; ECF 253-2 at 145:24-146:3; Ex. K (2024.1.19 Yingling 37.2 Response Letter).The only actual badge Yingling had on display for Ms. Aska to see was an IDOC badge. ECF 253-11 (Yingling Dep) at 140:25-141:2. Defendants did not have any Marshal's badge to display. ECF 253-11 (Yingling Dep) at 141:6. Montemayer claims that he has a Marshal's badge too, but he doesn't display it. ECF 253-2 (Montemayer Dep) at 146:23-147:3 ("It's always in my pocket"). IDOC required them to wear their badges under state law and policy. ECF 253-11 (Yingling Dep) at 59:18-21

34. Disputed in part. IDOC Chief Garnett ordered Defendant Montemayer to coordinate the apprehension of Graham for transporting drugs into a state facility without the task operation. Ex. P (IDOC Email re Drugs) at 1. He ordered Montemayer because IDOC assigned him as the lead investigator on the case. ECF 253-11 (Yingling Dep.) at 102:19-21. IDOC retained responsibility for the conduct, acts, and omissions of Montemayer and Yingling because they were agents of the state while members of the task force. *Id.* at 6, 8. Chief Garnett was unaware the Great Lakes Regional Task Force adopted the case, and he did not report to the Task Force. ECF 253-9 at 54:2-9.

RESPECTFULLY SUBMITTED,

**KIMBERLY ASKA**

By: /s/ Quinn K. Rallins

Jon Loevy

Quinn Rallins
LOEVY &amp; LOEVY
311 N. Aberdeen St., 3 rd Fl.
Chicago, IL 60607
T: 312-243-5900
F: 312-243-5902
rallins@loevy.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which effected service on all counsel of record.

By: /s/ Quinn K. Rallins
*Plaintiff's Attorney*

7